JOHNSON v. BROOKLYN HEIGHTS R. CO.

(Circuit Court, E. D. New York. August 20, 1896.)

1. PATENTS—INVENTION—SIMPLICITY OF STRUCTURE.
The conception of a life guard for street cars, consisting of a simple skeleton platform, of yielding material, projecting in front of the car, as near as practicable to the ground, and upon which a person may fall and be carried along without injury until the car stops, held, notwithstanding its simplicity and apparent obviousness, to involve patentable invention, in view of the complicated devices which preceded it, and the length of time such a device was needed before it was forthcoming. Loom Co. v. Higgins, 105 U. S. 580, followed.

2. SAME—LIMITATION OF CLAIMS—INFRINGEMENT.
The express mention, in a patent for a street-car life guard, of a "wire" screen stretched upon the frame of the guard, held not to limit the patent

to a screen made literally of wire, and that a screen of iron slats was an infringement.

3. SAME—STREET-CAR LIFE GUARDS.
  The Johnson patent, No. 454,214, for a life guard for electric and cable cars, construed, and *held* valid and infringed.

This was a suit in equity by Tom L. Johnson against the Brooklyn Heights Railroad Company for alleged infringement of a patent relating to life guards for electric and cable cars.

George J. Harding, for plaintiff.

J. S. Rusk, for defendant.

WHEELER, District Judge.   This suit is brought for alleged infringement of patent No. 454,214, dated June 16, 1891, and granted to the plaintiff, for a life guard for electric and cable cars.   The specification, after describing the injurious effect of guards that push the person out of the way of the car wheels, says:

"To prevent such accidents, I have devised an improved life guard, in the form of a platform projecting from the ends of the car, over the track, and on which a person may fall and be carried along without injury until the car can be stopped, or until the party has so far recovered his wits as to be able to help himself." "As my improved life guard is intended to rescue the fallen by carrying, rather than tumbling, them, so long as it is adapted to perform such service the construction thereof may be varied indefinitely, according to circumstances.   The life guard should combine strength with lightness, should be of such material as will not be injured by exposure to the weather, and should be of such construction that water, snow, or mud will not accumulate thereon, and, last, it should have such flat and yielding or pliable surface as not to bruise a person falling thereon, and so that the person will not be liable to fall off of the life guard.   A preferable construction is shown in the drawings, and may be as follows: A flat bar is set edgewise, and bent, approximately, U-shaped, as shown, and provided with crossbar, and to this framework is attached a wire screen, the meshes of which are so small as to preclude the possibility of even a child's hand being thrust through the meshes.   The skeleton platform of life guard should extend perhaps three feet (more or less) beyond the car, and should be somewhat broader than the car tracks, and, if operating in advance of the motor or grip car, should be located as near the pavement as is practicable,—say three or four inches (more or less) from the pavement.   The car steps are usually of metal, and, being sufficiently strong for the purpose, as a matter of convenience I attach brackets to the underside of the steps, to which brackets are pivoted bars near the forward end of the steps, the bar rearward of the pivot extending along and engaging the underside of the steps, by means of which the life guard is maintained in approximately a horizontal position, but may tilt upward.   With the life guard located so near the pavement as aforesaid, a violent rocking of the car endwise might cause the free end of the life guard to collide with the pavement; hence the pivotal feature.   And some provision should be made to prevent the life guard from catching on the pavement.   If the pavement is tolerably smooth, the rounding of the forward lower edge of the life guard would be sufficient.   If the pavement be rough, a shoe or runner had better be attached to the free end of the life guard, about midway thereof laterally; such shoe comprising, preferably, a flat plate of steel sloping back under the life guard as shown.   The free end of this shoe or runner should be turned up, as shown, so that it will not catch on the pavement in case the car runs backward.   In the normal position of car and life guard, this shoe or runner is not supposed to engage the pavement."

The claims in question are for:

"(1) The combination, in a street car, of a life guard consisting of a substantially U-shaped frame, and a wire screen stretched across the frame

from side to side, substantially as set forth. (2) The combination, in a street car, of a life guard consisting of a substantially U-shaped frame, a cross-bar secured thereto, and a wire screen stretched across the space formed between the frame and crossbar, substantially as set forth."

The defenses are want of patentable novelty, and of infringement. Various prior contrivances projecting from the ends of such cars, for catching, carrying, and saving persons in their way, are shown in the patents set up; but all of them are complicated with contrivances to be set in motion by the hitting of the person by them, or the falling of the person upon them, and none of them have the simple projecting horizontal platform of the patent, upon which the person is likely to fall, be carried, and saved. The invention seems to consist in doing away with all these intricate movements, and bringing out this simple appendage. Now it is seen, it is so simple as to seem to have been almost obvious, without invention, to any one familiar with the subject. The want of such a thing so long, and these patents, show, however, that it had to be sought out with more than mere mechanical skill. Loom Co. v. Higgins, 105 U. S. 580. In this view, the patent seems to be valid as to these claims.

The defendant uses the projecting platform covered with a screen of strips of iron, but not of wire, and not pivoted at all, and without any shoe, but so attached to, that it may be shoved under the end of, the car, out of the way, when not wanted. The omission of the pivotal attachment, of the shoe, and of the wire of the screen is said to take this platform out of the scope of the patent. The pivotal attachment and shoe, besides being described rather as preferential, are not taken into these claims. The wire screen is expressly brought into them, and the most difficult question in the case is whether the patentee has not thereby limited the patent to a platform covered with such a screen. Some of the cases are quite strict about this. James v. Campbell, 104 U. S. 356; Groth v. Supply Co., 9 C. C. A. 507, 61 Fed. 284. None of them seem, however, to require this court to hold that this claim for a wire screen to sustain a person would not be infringed by any screen in that place but one made literally of wire. Smith v. Macbeth, 14 C. C. A. 241, 67 Fed. 137. These are practically the same, for the purpose required. Decree for plaintiff.