McBRIDE v. KINGMAN et al.   SAME v. SICKLES et al.   SAME v. AINS-
        WORTH et al.   SAME v. RANDALL et al.

(Circuit Court, S. D. Iowa, C. D.   February 15, 1896.)

Nos. 2,306–2,309.

1. PATENTS—LIBERALITY OF CONSTRUCTION.
    Liberality, rather than strictness, should prevail where the fate of the patent is involved, and the question to be decided is whether the inventor shall hold or lose the fruits of his genius and labors. This principle is not, however, to be carried so far as to exclude what is in the patent, or to interpolate anything which it does not contain.

2. SAME—COMBINATIONS.
    Whatever is essential to the peculiar combination sought to be patented must be included in the claims. The patent cannot be construed to cover a result not mentioned in the claims, or even in the specification, and which is merely an afterthought of the inventor.

**3.** SAME—OMISSION OF ELEMENTS.

The omission from the claims of one device or element described in the specifications is a dedication of such device to the public.

**4.** SAME—TWO PATENTS TO SAME INVENTOR.

The fact that an element or device described in the specifications, but omitted from the combination covered by the claims, is afterwards included in a subsequent patent to the same inventor, does not in any way aid in giving to the earlier patent a construction whereby such device may be included in the combination thereof.

**5.** SAME—RIDING ATTACHMENTS FOR PLOWS.

The McBride patent, No. 199,082, for an improved riding attachment for plows, was not, in view of the prior state of the art, for a primary invention; and the combination covered by the claims is therefore not entitled to a broad range of equivalents. The patent construed accordingly, and *held* not infringed.

**6.** SAME.

The McBride patent, No. 284,036, also for an improved riding attachment for plows, was not anticipated by the prior patent to the same inventor; but the invention is of a secondary character, and the claims are to be construed as covering only the particular combinations claimed. *Held*, therefore, that the patent was not infringed.

These were four patent infringement suits, brought by J. H. McBride against the following defendants, respectively: Kingman & Co., R. M. Galbraith, and the Weir Plow Company; H. H. Sickles and Deere & Co.; James Ainsworth, John S. Bonbright, and the Moline Plow Company; and George W. Randall, Adam Dickey, and the Norwegian Plow Company.

Cummins & Wright, for plaintiff.

McVey & Cheshire, for defendants Moline Plow Co. and others.

John G. Manahan and N. M. Cady (W. W. Butterworth, of counsel), for defendants Kingman & Co. and others.

WOOLSON, District Judge. The four cases above entitled were heard together. Plaintiff, McBride, bases his several actions upon two patents for improved riding attachments to plow, issued to him as patentee, viz. No. 199,082, dated January 8, 1878, and No. 284,036, dated August 28, 1883. These patents are hereinafter referred to as plaintiff's 1878 and 1883 patents, respectively. Plaintiff asks decree for damages for infringements thereof, and for permanent injunction against each defendant. The defendants in each case, while denying infringement of plaintiff's patents, set up therein the patents under which they claim their several plows are lawfully manufactured. They also, each defendant using substantially the same terms, attack the validity of plaintiff's said patents. I have not deemed it necessary to enter specifically or fully into the questions raised as to such validity, the decision reached on other grounds rendering such inquiry unnecessary.

The second patent issued to plaintiff may be broadly stated as comprising improvements, as to detail, in methods of applying the general improvements claimed in his first patent. In argument herein, as in the introduction of proof, stress is particularly laid, by counsel for all parties, upon the first patent. The invention claimed by plaintiff in his first patent, which he states is an "improved riding attach-

FEDERAL REPORTER, vol. 72.

ment for plows," is given in his specifications in said patent as follows:

"My invention relates to that class of plow attachments designed as a means of carrying a plowman in such position, relative to a plow, that his weight will aid in making the plow run smoothly and evenly without increasing the draft and labor of the horses, and that he may, by simply adjusting levers at his side, readily govern the width and depth of the furrow, and plow a field uniformly with a common plow without walking."

As to this first patent, counsel for plaintiff, in his printed brief, says (page 3):

"The plow shown in the drawings and described in the specifications is a three-wheeled riding plow, rigid in all its parts, but capable of two adjustments, viz. one for raising or lowering the front end of the plow beam, the other for changing the vertical plane of the plow and plow beam. The claims on which the plaintiff principally relies are the first and third. They are as follows:

" '(1) In combination with plow beam and hinged axle, the lever, B, having the combination rack and fender, y, and lever, B', provided with the spring latch, z', substantially as and for the purposes shown and described.'

" '(3) The vertical lever, B', having the combined rack and fender, y, and the gravitating latch, h, the hinged axle; C, carrying the wheel, D, and rack, g, the jointed fulcrum, t, clamping the coulter, w, x, the horizontal lever, B², having a spring latch at its rear end, and carrying a caster wheel at its front end, and the adjustable brace, m, when arranged and combined to operate substantially as and for the purposes shown and described.'

"While it is our opinion that the invention of Mr. McBride is fairly set forth in both claims, we prefer the expression found in the first claim, and shall, therefore, while insisting upon both, give our attention chiefly to the first. This claim substantially describes, and claims in combination, all the essential parts of the plow. It omits nothing save the combining mechanism and the three wheels upon which the plow is mounted, and which, as will presently be shown, are not necessary to be specified in the claim, although necessary in the practical operation of the implement. The real discovery made by the complainant was the method of so rigidly attaching a plow beam to the axle upon which the wheels were mounted as that the bottom of the plow would at all times bear a fixed relation to the furrow wheel. This was the characteristic of the invention,—a characteristic that distinguished the plow in which it was embodied from all prior structures; a characteristic that converted failure into success, and revolutionized the industry."

In construing the first claim of this patent (1878), it becomes important to determine whether plaintiff's device is a "primary invention." And this brings us at once to the doctrine to be applied in construing these claims. There can be little difference of opinion as to the basis of this construction.

In Masury v. Anderson, 11 Blatchf. 165, Fed. Cas. No. 9,270, Justice Blatchford said:

"The rights of the plaintiff depend upon the claims in his patent, according to its proper construction, and not upon what he may erroneously suppose it covers."

In Keystone Bridge Co. v. Phoenix Iron Co., 95 U. S. 274, 278, the court say:

"If the patentees have not claimed the whole of their invention, and the omission has been the result of inadvertence, they should have sought to correct the error by a surrender of their patent, and an application for a reissue. * * * But the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the patent office or the appellate tribunal to which contested applications are referred. When the terms in a patent.

are clear and distinct (as they always should be), the patentee, in a suit brought upon the patent, is bound by it. * * * He can claim nothing beyond it."

In White v. Dunbar, 119 U. S. 47, 51, 7 Sup. Ct. 72, the court say:

"The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as evasion of the law, to construe it in a manner different from the plain import of its terms."

In McClain v. Ortmayer, 141 U. S. 419, 423, 12 Sup. Ct. 76, the court say:

"While the patentee may have been unfortunate in the language he has chosen to express his actual invention, and may have been entitled to a broader claim, we are not at liberty, without running counter to the entire current of authority in this court, to construe such claims to include more than their language fairly imports. Nothing is better settled in the law of patents than that the patentee may claim the whole or any part of his invention, and that, if he only describe and claim a part, he is presumed to have abandoned the residue to the public. The object of the patent law in requiring the patentee to 'particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery,' is not only to secure to him all to which he is entitled, but apprise the public of what is open to them. The claim is the measure of his right to relief, and, while the specification may be referred to, to limit the claim, it can never be made available to expand it."

And see Railroad Co. v. Mellon, 104 U. S. 112; Deering v. Harvester Works, 155 U. S. 296, 15 Sup. Ct. 118.

The same principle of construction is clearly and forcibly stated by Circuit Judge Sanborn, in delivering the opinion in Stirrat v. Manufacturing Co., 10 C. C. A. 216, 61 Fed. 980.

"The claim of a specific combination or device in a patent is a renunciation of every claim to any other combinations or devices for performing the same functions that are apparent from the face of the patent, and are not colorable evasions of the combination or device claimed. The statute requires the inventor to 'particularly point out and distinctly claim the part, improvement, or combination which he claims as his discovery.' Rev. St. § 4888. When, under this statute, the inventor has done this, he has thereby disclaimed and dedicated to the public all other improvements and combinations, apparent from the face of his specifications and claims, that are not evasions of the device and combination he claims as his own. The claims of his patent limit his exclusive privileges, and his specific actions may be referred to, to explain and to restrict, but never to expand, them."

The construction of the patent must not be made in an illiberal spirit, with a view to destroy the grant. A patent should be construed in a liberal spirit, to sustain the just claims of the inventor. This principle is not to be carried so far as to exclude what is in it, or to interpolate anything which it does not contain. But liberality, rather than strictness, should prevail where the fate of the patent is involved, and the question to be decided is whether the inventor shall hold or lose the fruits of his genius and his labors. Rubber Co. v. Goodyear, 9 Wall. 788. Patents for inventions are to receive a liberal construction, and, under the fair application of the rule, "ut res magis valeat quam pereat," are, if practicable, to be so interpreted as to uphold, rather than to destroy, the right of the inventor. Turrill v. Railroad Co., 1 Wall. 491.

The further rule is stated by the supreme court in Roemer v. Peddie, 132 U. S. 317, 10 Sup. Ct. 98, that:

"When the patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions, for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it."

Or, as stated in Caster Co. v. Spiegel, 133 U. S. 368, 10 Sup. Ct. 409:

"When a patentee has modified his claim in obedience to the requirements of the patent office, he cannot have for it an extended construction which has been rejected by the patent office; and in a suit on his patent his claim must be limited, where it is a combination of parts, to a combination of all the elements which he has included in his claim as necessarily constituting that combination."

It must be further borne in mind that the state of the art to which an invention belongs, at the time that invention was made, must be considered in construing any claim for that invention. Carlton v. Bokee, 17 Wall. 463; Railway Co. v. Sayles, 97 U. S. 554. "It is well settled that the * * * claim must be read and interpreted with reference to the rejected claims and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the patent office or disclosed by prior devices." Knapp v. Morss, 150 U. S. 225, 14 Sup. Ct. 81.

The file wrapper and contents of plaintiff's 1878 patent are in evidence herein. These show that a patent was not allowed to plaintiff until after the patent office had five times rejected the application, and after plaintiff had five times amended his claim, and that these rejections were almost entirely based on the fact, as determined by that office, that the claims presented by the plaintiff were in conflict with prior patents. Defendants have introduced in evidence over 50 letters patent, prior to the 1878 patent to plaintiff, all of which relate to plow attachments, nearly all to different methods relating to riding plow attachments, and all in some way attempting to produce some of the results claimed herein by plaintiff as resulting from his invention, by devices in many respects closely analogous to those used, in whole or in part, by plaintiff. So that it is apparent, on inspection of those patents, that every result attempted by plaintiff, as expressed in his claim in this 1878 patent, had been thus attempted, and some of the attempts succesfully, by other inventors to whom letters patent had been issued.

Counsel for plaintiff insists, however, that the real discovery made by complainant was "the method of so rigidly attaching a plow beam to the axle upon which the wheels were mounted as that the bottom of the plow would bear at all times a fixed relation to the furrow wheel." He adds:

"This was the prominent characteristic of the invention,—a characteristic that distinguished the plow in which it was embodied from all prior structures."

An insurmountable obstacle to this conclusion is that plaintiff nowhere in his claims, nor even in his specification, announces this as a result attempted or secured. In the original application presented

by him, as well as in that on which his letters patent issued, he states that he has "invented an improved riding attachment for plows." In the original application he commences his specification with:

"The object of my invention is to provide an improved means of carrying a plowman in such a position, relative to a plow, that his weight will aid in making the plow run smoothly and evenly without increasing the draft and labor of the horses, and that he may, by simply adjusting levers at his side, readily govern the width and depth of the furrow, and plow a field uniformly with a common plow without walking."

The specification, as rewritten by plaintiff, and as accompanying the letters patent issued, states:

"My invention relates to that class of plow attachments designed as a means of carrying a plowman in such position, relative to a plow."

—And then follows remainder of specification as above copied. Neither in specification nor claim is there mention or suggestion that his invention bears any relation to, or in any way will affect, the plow, so that "the bottom of the plow will bear at all times a fixed relation to the furrow wheel." If, as stated by Justice Blatchford, supra, "the rights of the plaintiff depend upon the claim in his patent, according to its proper construction, and not upon what he may erroneously suppose it covers," the conclusion is irresistible that the afterthought of the inventor cannot control or change his claims, as expressed in the patent, nor the only purpose or result of his invention as he at the time regarded and stated it. It may also be noted that, in his specification, accompanying the letters issued, plaintiff expressly declares, "My invention relates to that class of plow attachments designed," etc., thereby recognizing that plow attachments were then in existence which were designed to effect the result he was seeking to effect by his invention.

As touching the patent issued before the date of plaintiff's 1878 patent, we may note, out of the over 50 patents in evidence, and because of the similarity in many respects to the device of plaintiff as patented, in some of its elements, that at least 10 of these patents claim to effect the raising or elevating of the point of the plow by levers located within the driver's reach as he rides the plow; at least 5 of them effect the "canting" or oscillating of the plow by levers attached to the plow beam; and at least 5 of them have a rear or furrow wheel attached to the plow beam or frame. Especially are the patents issued to Felker (No. 48,387, June 27, 1865) and to Bailey (No. 184,579, May 27, 1876) closely similar to the devices of plaintiff as regards the devices for elevating point of plow and "canting" the plow. Had these two added a furrow wheel, attached to plow beam, it may be doubted whether plaintiff would have been granted any letters patent except on the most restricted claims, in every respect. Was plaintiff, then, a pioneer in this field of invention? It is difficult to define a primary invention, so that the definition shall accurately apply to all inventions. Perhaps as satisfactory consideration of this matter as can be found is contained in the opinion of Justice Bradley, in Railway Co. v. Sayles, 97 U. S. 554. The learned justice, in his consideration of the patent involved in that case (railroad brakes) says:

"Like almost all other inventions, that of double brakes came when, in the progress of mechanical improvement, it was needed; and, being sought by many minds, it is not wonderful that it was developed in different and independent forms, all original, and all bearing a somewhat general resemblance to each other. In such cases, if one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute. But if the advance toward the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled only to the specific form of device which he produces, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs."

After examining the different letters patent relating to plow attachments, and especially riding attachments for plows, it is impossible to escape the conclusion that, within the statement of Justice Bradley above quoted, plaintiff was not a pioneer in the field of invention wherein his letters patent place his claims. Such was the conclusion reached by Judge Shiras, in this court (McBride v. Plow Co., 40 Fed. 162), with regard to plaintiff's 1883 patent. How far, then, is the doctrine as to equivalents applicable to this invention of plaintiff, which we have found to be of a secondary nature? In Miller v. Manufacturing Co., 151 U. S. 186, 207, 14 Sup. Ct. 310, as delivered by Justice Jackson in 1894, appears the following:

"The range of equivalents depends upon the extent and nature of the invention. If the invention is broad and primary in its character, the range of equivalents will be correspondingly broad, under the liberal construction which the courts give to such inventions."

As illustrating the difference, in breadth of liberality of construction, in these respects, between a primary invention and one not primary, we may profitably compare the declaration, in Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299:

"Where the invention is of a primary character, and the mechanical functions performed by the machine are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same result are infringements, although the subsequent machines may contain improvements in the separate mechanisms which go to make up the machine,"

—With the statement of the same justice (Blatchford) in Duff v. Pump Co., 107 U. S. 636, 2 Sup. Ct. 487:

"The case is one where, in view of the state of the art, the invention must be restricted to the form shown and described by the patentee. * * * Todd was not a pioneer. He merely devised a new form to accomplish these results. The defendant adopts another form. Under the circumstances, the Todd patent cannot be extended so as to embrace the defendant's form. The latter is not mere colorable departure from the form of Todd, but a substantial departure."

So, in Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507:

"The patent being for a combination, there can be no infringement unless the combination is infringed. In Prouty v. Ruggles, 16 Pet. 336, it was said: 'This combination, composed of all the parts mentioned in the specification, and arranged with reference to each other and to the other parts of the plow in the manner therein described, is stated to be the improvement, and is the thing patented. The use of any two of these parts only, or of two combined with a third which is substantially different in form or in the manner of its arrangement and connection with the others, is, therefore,

not the thing patented. It is not the same combination, if it substantially differs from it in any of its parts.' * * * But this rule is subject to the qualification that a combination may be infringed when some of the elements are employed and for the others mechanical equivalents are used which are known to be such at the time the patent was granted."

Meter Co. v. Desper, 101 U. S. 332, states the proposition as to combination in these words:

"It is a well-known doctrine of patent law that the claim of a combination is not infringed if any of the material parts of the combination are omitted. It is equally well known that, if any of the parts is only formally omitted, and is supplied with a mechanical equivalent, performing the same office and producing the same result, the patent is infringed."

As stated in plaintiff's 1878 patent, the first claim (above copied) includes the plow beam and hinged axle (the axle extending from land wheel to plow beam, on the latter of which the axle is hinged), a vertical lever (fastened rigidly to the plow beam near the driver's seat, and whose office is to "cant" or oscillate the plow beam, and thereby the plow attached thereto), a horizontal lever (extending from front end of beam to the vertical lever), into which a spring latch (attached to the rear end of the horizontal lever) works for the purpose of holding such horizontal lever at the place desired by the driver. This claim is complete in but one result accomplished, viz. affording a device for elevating or depressing the point of the plow, by means of the horizontal lever, operated by the driver from his seat on the plow, if, indeed, the claim is complete in that result. No attachments are described for this horizontal lever, except at its rear end, where it is secured by means of the spring latch to the combined rack and fender, which latter is attached to the vertical lever, such lever being attached rigidly to the plow beam. We are authorized to thus regard the vertical lever because of the words in this claim, "In combination with the plow beam." It may be possible that the liberality of construction, spoken of above, would permit us to also include the attachments by which the horizontal lever is attached to the plow beam, since, in specification and drawing, such attachment is shown at what is called, in the second claim, a "joined fulcrum," which is an upright piece attached to the plow beam at the point where the coulter is attached. The forward end of this horizontal lever is not attached to the plow beam. But it is attached to an upright standard which passes a short distance from the front end of the plow beam through a casting (the casting being attached to the beam), and terminates at the axle of a caster wheel, resting on the ground. The operating of this horizontal lever, according to the specification, is accomplished by the driver, from his seat, elevating or lowering the rear end of the lever. As he elevates it, the upright piece ("jointed fulcrum") enables him to press down upon the upright standard (which extends, as above, from the forward end of lever to caster wheel), and thereby raise the front end of the plow beam, thus elevating the point of the plow. But, unless, by the phrase, "In combination with the plow beam," the claim is made to include the caster wheel and its upright standard, this claim does not describe any effective operation of the horizontal lever, and therefore no effective attempt at raising the plow beam and plow. The claim does not per-

mit another movement of the plow, its lateral or "canting" movement. This is accomplished by means of the vertical lever. As the driver draws towards him or pushes from him the top of this upright lever, the plow is "canted" accordingly. But the claim does not describe any means for holding the plow in this "canted" position. The specification describes, and the drawing shows, a segmental rack into which a gravitation latch, also described in specification and shown in drawing, engages and locks this vertical lever. But neither this rack nor this lever is made part of the combination as claimed. So that, although the driver may thus "cant" his plow, the combination, as claimed, affords no means of maintaining such position of the plow, except as the driver may maintain it by retaining his hold on the vertical lever. By this claim, the vertical and horizontal levers are rigidly locked together, through action of the combined rack and fender described, while the plow is in operation.

Plaintiff insists that there is secured to him, under this claim, a combination whereby "the bottom of the plow at all times bears a fixed relation to the furrow wheel." The specification described, and the drawing shows, a wheel rigidly attached to or near the rear end of the plow beam, and which is behind the plow, and runs in the fresh furrow. This furrow wheel has no attachment other than to the plow beam. This claim, however, is entirely silent as to this furrow wheel. It nowhere makes this furrow wheel a part of the combination therein claimed by plaintiff as his invention. That he might have included it in this combination, and thus made it a part of his invention, is of no avail. Rather, it must be presumed that, since he might have so claimed, and did not, he elected to "dedicate to the public" this part not claimed. It may be that plaintiff might have been justified in assuming this furrow wheel as a part of the plow structure to such a degree as that it needed not specific mention, if, in the state of the art at the date of his application, riding plows were generally equipped with such wheel in the position and substantially attached as in plaintiff's specification. The proof shows no such state of the art at that time, but rather that, while some of these plows were equipped with a furrow wheel, these were exceptions rather than the general rule. Besides, if this wheel, as now claimed by plaintiff, is an essential part of his invention, if—using the words of Judge (now Justice) Brown, in Inspirator Co. v. Jenks, 21 Fed. 911 —this wheel was "essential to the peculiar combination" plaintiff desired to patent, he should have included it in his claim for a combination. Said Judge Brown:

"In drawing the claims for a combination patent, we do not understand it to be necessary to include any elements except such as are essential to the peculiar combination and are affected by the invention. Other portions of the machine are shown usually in the drawings, to exhibit their relation to the patented combination, and they are wholly unnecessary to the validity of the claims."

It necessarily follows that whatever was "essential to the peculiar combination" sought to be patented must be included in the claim thereof. And the design stated by plaintiff in his specification—affording the plowman, "by simply adjusting levers by

his side, to govern the width and depth of the furrow, and plow a field uniformly with a common plow without walking," and that the plowman's "weight will aid in making the plow run evenly and smoothly without increasing the draft and labor of the horses" —must be accepted as having been intended and designed by him to be accomplished by the combination he claims in his application as his invention; and that whatever is not included in his claim for such combination was not then intended by him to be a part of, nor regarded as essential to, such combination.

Further, if plaintiff, in his specification, in stating the design of his invention,—what his invention was intended to accomplish,—did not state such design or result as he now states it, and especially if his present statement would make essential to the combination, to effect such result, elements which he did not include in his claim for the combination, for whose invention he asked the patent, we are authorized and forced to conclude his present statement of the design or result to be an afterthought, and not to have then been contemplated by him. His invention must stand or fall by the claims he then made, and on which his patent issued.

The second claim of this 1878 patent relates only to the jointed fulcrum as it is called, which at its upper end is attached to the horizontal lever, and at its lower end to the plow beam and coulter.

The third claim is as follows:

"The vertical lever, B', having the combined rack and fender, y, and the gravitating latch, h, the hinged axle, C, carrying the wheel, D, and rack, g, the jointed fulcrum, t, clamping the coulter, w, x, the horizontal lever, B², having a spring latch at its rear end, and carrying a caster wheel at its front end, and the hinged and adjustable brace, m, when arranged and combined to operate substantially as and for the purposes shown and described."

The hinged brace, m, extends from the front end of plow beam to the inner side of the land wheel, D, so as to constitute a curved axle brace. In this third claim we now have the front (caster) wheel, so that this patent may be held to include such wheel as a part of the invention. But the rear (furrow) wheel is not made a part of the combination under this claim, and is not a part, therefore, of the invention secured by these letters patent. It affords us no assistance, in construing this 1878 patent, that this rear wheel is made a part of the combination described in the 1883 patent, for neither patent can thus support the other. Each must be construed, on this point, as to its own validity and effect, under the same general rules as though the patents had issued to different patentees.

But I need not pursue this matter further. The plows manufactured and sold by the several defendants, and which are claimed to be infringements of this 1878 patent, have been brought into court, and their methods of operation illustrated. They have also, by drawings, been introduced in evidence as exhibits. It would serve no useful purpose to consider each plow in detail, as to its several parts and mode of operation. I find in none of them the entire combination contained in any claim in plaintiff's 1878

patent. None of them have the rigid method of connecting the vertical lever and horizontal levers which are prominent factors of the combination in claims 1 and 3. None of them have the jointed fulcrum described in claim 2. None of them have the combined rack and fender, which are made parts of the combination in claims 1 and 3. And we find in none of defendants' said plows any devices, which so appear, in their method and result of operation, to be mechanical equivalents for the above-named elements as in any wise to become colorable evasions. All of the plows manufactured or sold by defendants which have been brought into court do not include these above-named elements of plaintiff's combinations. The operations of defendants' plows are effective, without the presence of any one of said elements. We may here adapt the language in Miller v. Manufacturing Co. (page 208, 151 U. S., and page 310, 14 Sup. Ct.), and say:

"The specific device [or elements] described in and covered by the [McBride] patent could not be used in defendants' combinations, nor defendants' [device or its elements] in the plaintiff's combinations. This interchangeability or noninterchangeability is an important test in determining the question of infringement."

Plaintiff's counsel, in printed brief, says:

"We may frankly say that, if the court holds that the complainant is not entitled to a reasonable application of the doctrine of mechanical equivalents, we believe that there is no infringement on the part of respondents of the first claim of the 1878 patent."

And this statement is based on his claim of mechanical equivalents as applied to primary inventions, of which he claims plaintiff's invention to be an instance. Under the well-settled doctrines applicable, I find that, as to plaintiff's said 1878 patent, no infringement on the part of any of the defendants has been proven.

As to plaintiff's second patent, that of August 28, 1883, it is insisted by defendants that said letters patent are void, because they were anticipated by the first letters issued to plaintiff, contain the same combination as the first letters, contain no new elements, and do not enlarge the claims of the first patent. Justice Jackson considers at some length, and with considerable of detail, in Miller v. Manufacturing Co., 151 U. S. 186, 198, 199, 14 Sup. Ct. 310, the doctrines applicable to second patents to the same person wherein the invention relates to any part of the subject-matter of the former patent. After an extended examination of the decisions of the court, he says:

"The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claim may differ; that the second patent, although containing a broader claim, more general in its character than the specific claims contained in the prior patent, is also void; but that, when the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained. In the last class of cases, it must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that covered by the first patent; in other words, it must be something substantially dif-

ferent from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent. * * * It is settled, also, that an inventor may make improvements on his own invention of a patentable character, for which he may obtain a separate patent; and the cases cited by the appellee come to this point, and to this point only, that a later patent may be granted where the invention is clearly distinct from and independent of one previously patented. * * * It is not the result, effect, or purpose to be accomplished which constitutes invention, or entitles a party to a patent, but the mechanical means or instrumentalities by which the object sought is to be obtained; but a patentee cannot so split up his invention for the purpose of obtaining additional results, or of extending or prolonging the life of all or any of its elemental parts. Patents cover the means employed to effect results."

Tested by the doctrines thus announced, plaintiff's second patent is not invalid for any of the reasons assigned by defendants. The five claims included in this second patent are well and truly summarized by counsel for plaintiff, as follows:

"What we claim for the patent of 1883 is an improvement in the levers used for raising and lowering the front end of the plow and for oscillating it."

No useful purpose would be served by specifying the elements and combinations which, as claimed in the patent, bring the second patent, when compared with the first, within the doctrine announced in the above quotation. The invention claimed in the second patent is in no sense a primary invention, but in the fullest sense is secondary, and, in the state of the art when issued, can receive a construction only granting a monopoly on the particular combinations therein claimed, applied specifically thereto. Had this second patent been issued in 1878, instead of that then issued, and claims accordingly enlarged, a different result might have been obtained as to some of the plows manufactured by the defendants; or if, to the plowing machine, as shown in the 1883 patent, the doctrines relating to primary inventions were applicable, a like result might obtain. But plaintiff is held closely to the doctrines applicable to mere combinations which result in improvements on inventions which have long passed the primary stage. The claims herein do not strike out into any new field, but are merely changed and improved methods of operation in fields wherein many other inventors, including plaintiff himself in his former patent, had been at work. I will not attempt to make a detailed or specified examination or comparison herein of defendants' several plows, in evidence, with regard to this second patent of plaintiff. To so attempt would add much length to this opinion, without resulting benefit; and, on the oral hearing, as well as in his printed brief, the contest, as made by plaintiff, lay as to infringement against the first patent. I may say that, having carefully made such comparison, I find no infringement proven, on the part of any of the defendants, with regard to any of the claims contained in plaintiff's patent of August 28, 1883.

On the whole case, therefore, I find the equities with the defendants. Let decree be entered dismissing the several bills in each of the actions entitled on the first page of this opinion, with costs against plaintiff in each case. To all of which, in each case,

plaintiff duly excepts, and is given 90 days to complete and file certificates of evidence, bill of exceptions, or such other statement of exceptions as he may be advised.