VICTOR TALKING MACH. CO. et al. v. AMERICAN GRAPHOPHONE CO.

(Circuit Court of Appeals, Second Circuit. January 14, 1907.)

No. 116.

1. PATENTS—CONSTRUCTION OF CLAIMS—PROCEEDINGS IN PATENT OFFICE.

Where it is shown that a patentee has acquiesced in the rejection of broad claims by the Patent Office by their cancellation and the substitution of narrower claims therefor, the limitations thus introduced into such claims must be read and interpreted in the light of the circumstan-

ces surrounding the issuance of the patent, as shown by a reference to the rejected claims and to the prior state of the art.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §.244.]

**2. SAME.**

An applicant for a patent is entitled to specify and claim in his application the subject-matter of which he believes himself to be the original inventor, and to persist in his assertions and claims until final action thereon by the Patent Office; but when his claims are rejected on references cited against them, he is called upon to exercise his election between insistence and appeal, or desistance and acquiescence, and, if he acquiesces, the public is entitled to the benefit of the limitations and admissions imposed upon him as a condition precedent to the allowance of the patent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 244.]

**3. SAME—INFRINGEMENT—SOUND RECORDS.**

The Berliner patent No. 548,623, for duplicate sound records and method of making the same, in which the matrix is protected against the sulphur fumes from hard rubber by facing it with a metal not attacked by such fumes, is limited by the proceedings in the Patent Office to records composed of hard rubber, and is not infringed by records made from a different material and one which does not require the method of the process claims.

In Error to the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 145 Fed. 189.

This cause comes here on appeal by complainants from a decree on final hearing of the United States Circuit Court for the Southern District of New York, dismissing bill for infringement of patent No. 548,623, granted October 29, 1895, to Emil Berliner, for duplicating sound records. The opinion of the court below is reported in 145 Fed. 189.

Horace Pettitt, for appellants.

Philip Mauro and C. A. L. Massie, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The court below reached the conclusion that the sound records of the defendant did not infringe the claims in suit, for the reason that said claims were limited in terms and in fact to an article of manufacture composed of hard rubber. An examination of the file wrapper confirms the correctness of this conclusion. It appears therefrom that the patentee, by reason of the rejection of his broad original claims, was forced to substitute the narrower claims upon which the patent was finally allowed.

The original application for the patent was filed by Berliner himself, and in its specification covered generally a method of making duplicate records by impressing a matrix, into suitable material, or blank sheets of impressible material, and a modified method of making such records when rubber was used, which consisted in coating the matrix with iron or nickel so as to protect it from the sulphur fumes generated by the rubber. One claim covered broadly the method of pressing the matrix "into a material which is hard in a cold state and soft and yielding

in a warm state." Other claims were for pressing it into "softened hard rubber." The broad claim was twice rejected. Thereupon, Berliner, through his attorney, canceled said claims, and for the broad claim substituted two new claims, one for pressing the matrix "into a material, while the latter is softened by heat, and holding it in contact with the same until the material has cooled and hardened," and another for pressing it "into plastic material" and holding it in contact, as above, and he inserted for the first time a claim for a product, being for a record consisting "of a disk of hard rubber," etc. Both of the above substituted claims were rejected and canceled; the narrow claims were not rejected. Thus every claim of invention was narrowed down to the specific method of protecting the matrix against the fumes from hard rubber, and thus producing an improved matrix, and of impressing it in hard rubber, and for the resultant product.

Thereafter the attorney for Berliner, asking for a reconsideration of the case, said, inter alia, as follows:

"While the applicant is positive that none of the processes described in the references cited can be practiced, or have ever been practiced, upon hard rubber, still, in order to avoid further delay and with the hope of bringing this case to a termination, claims 1, 2, and 5 have been canceled. There now remain in this case only the process claims which stand allowed, and in addition thereto three claims for the article of manufacture produced by applicant's process, and, as he fully believes, practically producible only by his process."

And, distinguishing the references cited to processes for making rubber stamps, the attorney says:

"They have no resemblance to each other, for the one is in the natural state soft, yielding, and elastic, and the other is hard and rigid; both serve entirely different purposes, for a rubber stamp could not be used for reproducing sounds, and a sound record could not be used for printing."

The attorney further says:

"The examiner says that the article claimed might be produced by other processes than those claimed by the applicant, and that therefore a division should be effected. Now this is only a somewhat free guess on the part of the examiner, but experience has taught this applicant that the only practicable way of producing the article claimed is by the process claimed, and surely the knowledge of the applicant must in these matters control the opinion of the examiner, who is not supposed to have practical knowledge in these matters."

And again, later, the attorney says:

"Has anybody ever attempted to reproduce a sound record upon hard rubber, and, if he has attempted it, has he succeeded?"

Finally, the examiner insisted that:

"The statement of invention contained in the second paragraph of the amendment inserted in page 1 is broader than the invention covered by the claims, and should therefore be restricted. See patent No. 362,419, to Edison, of record."

The attorney for Berliner, therefore, canceled said paragraph, which is as follows:

"The process of producing copies of the sound records consists, broadly, in depositing copper or other metal on the original sound record, and thus obtaining a matrix, and then impressing this matrix into blank sheets of impressible material. The product is a duplicate of the original record."

In these circumstances, it is clear that the applicant, in order to secure his patent, acquiesced in the rejection by the Patent Office of his broad claims, and thereby secured a patent for an article of manufacture of hard rubber, claimed by him to be producible only by his process, which necessarily consisted in the use of the materials described in the process for overcoming the difficulties encountered in making the product in hard rubber, or in the use of other materials, similar in character, for overcoming said obstacles. Here the patentee, having selected a well-known product, having well-known characteristics which made it desirable for reproducing records, invented and patented a novel means for overcoming the obstacle or objection involved in its use, and he is entitled to the benefit of this invention. But upon the familiar principles applied in such cases, his action was equivalent to a notice to the world that it could make any other duplicate records, provided they were not the records limited as specified and claimed in his patent.

The construction now claimed by the patentee is, for the purposes of this inquiry, practically the same as though the statements canceled in the specification and the canceled claims had remained in the patent, namely, for any impressible material which is like hard rubber in appearance and is hard when cold and softens under heat. In this connection it may further be noted that the Herrington patent No. 399,265, one of the references cited by the Patent Office, disclosed a process of making duplicates of cylindrical records by the use of sheets of wax, resin, pitch, celluloid, glue, rubber, or their compounds, or some equivalent material adapted to be softened by means of heat or otherwise. In these circumstances, the settled rules as to the effect of the admissions and declarations of an applicant for a patent during the pendency of an application are directly in point. Where it is shown that the patentee has acquiesced in the rejection of broad claims by their cancellation, and has substituted narrower claims therefor, the limitations thus introduced into such claims must be read and interpreted in the light of the circumstances surrounding the issuance of the patent, as shown by a reference to the rejected claims and to the prior state of the art. Greene v. Manhattan Co., 135 Fed. 520, 68 C. C. A. 70, and cases cited; Smith v. Macbeth, 67 Fed. 137, 14 C. C. A. 241.

The applicant for a patent is entitled to specify and claim in his application the subject-matter of which he believes himself to be the original inventor, and to persist in his assertions and claims until final action thereon by the Patent Office. But when his claims are rejected on references cited against them, he is called upon to exercise his election between insistence and appeal or desistance and acquiescence. And while the language of the patent as issued may not be contradicted by mere voluntary expressions of opinion, or argumentative suggestions made by the applicant in his communications to the Patent Office, especially where no change is made in the claims, and while a patentee is entitled to the benefit of such equities as may be properly raised in his behalf from the transactions disclosed in the file wrap-

per, yet, on the other hand, the public is interested in securing due limitations upon the claim of an exclusive monopoly on the ground of patentable novelty, and is entitled to the benefit of admissions imposed upon the applicant as a condition precedent to the allowance of the patent. Reece Button-Hole Ma. Co. v. Globe Button-Hole Ma. Co., 61 Fed. 958, 10 C. C. A. 194; McBride v. Kingman (C. C.) 72 Fed. 908; Boyer v. Keller Tool Co., 127 Fed. 130, 62 C. C. A. 244; Haughey v. Lee 151 U. S. 282, 14 Sup. Ct. 331, 38 L. Ed. 162. "Undoubtedly a patent, like any other written instrument, is to be interpreted by its own terms. But when a patent bears upon its face a particular construction, inasmuch as the specification and claim are in the words of the patentee, it is reasonable to hold that such a construction may be confirmed by what the patentee said when he was making his application. The understanding of a party to a contract has always been regarded as of some importance in its interpretation." Goodyear Dental Vulcanite Co., v. Davis, 102 U. S. 222, 227, 26 L. Ed. 149. In the above case, the attorney for applicant, in response to a communication from the Patent Office, had limited his claim to the use of "hard rubber," and the court construed the language of the patent and limited the scope of the claims in the light of said resulting limitation.

While, therefore, an applicant for a patent may stake out the boundaries of his territory, yet if, upon notice from the Patent Office that some portion of said territory is the property of another or is held in common by the public, he acquiesces in such statement and alters his boundaries accordingly, he is concluded by such abandonment, and cannot afterward undertake to define his territory by rolling stones, which he may move about across the lines of his original boundaries so as to appropriate property previously conceded to belong to others.

In the case of this defendant against the Universal Talking Machine Company and the American Record Company (decided at this session of court) 151 Fed. 595, we have held that it involved invention to apply the process of producing sound records upon cylindrical disk records of the graphophone type to the flat disk records of the gramophone type for reasons therein stated, which differentiate said invention from the one at bar. In the discussion of the case at bar, we may assume likewise that it involved invention to apply the processes of the prior art to the process of duplicating gramophone sound records in impressible material, and that, if this patent had issued with a broad claim for an article produced by such process in materials other than hard rubber, said patent would have involved invention and would have been infringed by defendant. And in affirming the court below in dismissing this bill, in view of the declarations, admissions, amendments, and cancellations made by Berliner's attorney, showing a deliberate assent to and acquiescence in the action of the Patent Office, we are merely applying the rule of law, stated above, in holding that the patentee abandoned or waived his right to insist upon such a broad construction of the claims for a product as would embrace the defendant's disk.

We conclude, furthermore, that the article used by the defendant is not the equivalent of hard rubber. Defendant's material, which is a

manufacture of earth and shellac, is similar to the hard rubber of the claims in the fact that it is impressible when soft and hardens when cold. But this characteristic would apply also to glass and metal, and a construction which would cover defendant's material might be held to cover also such constructions. The fact that they look alike is immaterial. But defendant's material is not the equivalent of hard rubber, and does not infringe the patented invention, for a method of protecting a matrix against the fumes of sulphur and for the product resulting only from such method, for the fundamental reason that it does not contain sulphur, which is the essential ingredient of hard rubber. As already shown, the patent was originally and primarily for a process, and the patent issued upon the specific representation that the patented process necessarily involved a certain patented product, and that said product could only be produced by said process. In these circumstances it may well be argued that, in order to establish infringement, there must be proof of the use of the specified process of the patent, and that the words relied on by complainant, "or like material," following after "hard rubber" in the specification, were allowed to remain in the specification because they might properly include the use of other materials which, like hard rubber, would necessitate the protection of the matrix by the specified process, and exclude materials totally different therefrom, such as defendant's earth mixed with shellac, which does not involve the use of such process, and therefore is not in fact a like material.

The decree is affirmed, with costs.