## BESSER v. MERILLAT CULVERT CORE CO.

(District Court, S. D. Iowa, E. D.   June 21, 1915.)

1. PATENTS ⬳101—INFRINGEMENT—LIMITATION BY PROCEEDINGS IN PATENT OFFICE—WITHDRAWAL OF CLAIMS.

Where a claim made in an application for a patent is rejected, and then withdrawn, the applicant waives any right to a patent for the thing therein described.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 141; Dec. Dig. ⬳101.]

2. PATENTS ⬳328—INFRINGEMENT—COLLAPSIBLE FORM FOR BUILDING CULVERTS.

The Besser patent, No. 952,869, for a collapsible form for building culverts, construed, and, in view of the limitations imposed by the withdrawal of claims rejected by the Patent Office, held not infringed.

In Equity. Suit by Charles A. Besser against the Merillat Culvert Core Company. On final hearing. Decree for defendant.

J. L. Warren, of Des Moines, Iowa, and John E. Craig, of Keokuk, Iowa, for complainant.

Blake & Wilson, of Burlington, Iowa, for respondent.

WADE, District Judge. This is an action in equity, charging an infringement of patent No. 952,869, asking an injunction and accounting. Patent 952,869, was granted to Charles A. Besser on March 22, 1910, and is for an improvement in "collapsible forms for building

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

culverts." Respondent admits that it is manufacturing collapsible forms or cores for building culverts, but denies that it is infringing the patent granted to complainant, and also claims that complainant is not the original inventor, and that the patent to the complainant is void.

Complainant filed his original application for patent December 4, 1908. The claims made by complainant in its original application are as follows:

"1. The collapsible form for building culverts consisting of a series of movable overlapping outside sections, and a central screw for operating said sections, each section having its individual and separate diagonal braces connecting it to hubs or nuts upon the screw.

"2. The collapsible form for building culverts, consisting of a series of movable outside sections, and a central screw for operating said sections, said screw having both right and left hand threads, and each section having its individual and separate diagonal braces connecting it with hubs or nuts upon the threaded parts of the screw.

"3. The collapsible form for building culverts, consisting of a series of movable overlapping outside sections, and a central screw for operating said sections, said screw having both right and left hand threads, and each section having its individual and separate diagonal braces connecting it to both the right hand hubs and the left hand hubs upon the screw.

"4. The collapsible form for building culverts and the like, consisting of a series of outside sections, each consisting of a longitudinal angle bar, and a curved sheet metal plate attached along its side to the bar, said curved plates each overlapping upon the next adjacent plate, a central screw having both right and left hand threads, nuts movable on said threads, and braces connecting the nuts with the outside sections."

In his specifications Besser said:

"This invention relates to collapsible forms for use in building culverts, and my object therein has been to devise a readily adjustible and collapsible form, which is very durable, strong, and cheap, and which is an improvement upon the forms now in use."

He then describes the combination of parts, and methods of operation, and says:

"In these movements, the curved plates slide over each other, and conform each to the other, so that the form remains cylindrical at all times." * * * "I have shown a form consisting of six outside sections, each having its own braces connecting it with the threaded hubs or nuts of the operating screw, but the number of sections may be greater or less, and in case the number is large the number of braces must be correspondingly large."

On February 11, 1909, the Patent Office rejected all the claims aforesaid upon Great Britain and United States patents cited. On May 22, 1909, Besser filed substituted applications, including specifications and claims. The substituted application included 14 separate claims. On June 22, 1909, claims 4, 5, 7, 8, 11, 12, and 13 were rejected on patents cited. Of these, all were subsequently amended, except 7, which was withdrawn, and a substitute filed therefor. Claim 7, which was rejected and withdrawn, was as follows:

"7. A hollow expansible and contractible form, composed of sheet metal sections, slidable one over another, and radially disposed links, connected with the middle portions of certain of the sections, and with a marginal portion of each of the remaining sections, and means for shifting the links for contracting or expanding the form."

[1] Original claims 1 to 4, inclusive, and substituted claim 7, having been withdrawn, respondent is not liable herein for making a collapsible core or form described and limited in such claims. The claims were rejected because the thing described had been anticipated by previous inventors, as shown by patents cited. Numerous patents are before the court antedating the Besser patent, and I am satisfied that the ruling of the Patent Office is correct. In any event, it is the law that where claims are made and rejected, and then withdrawn, that the applicant waives any right to a patent upon the thing therein described.

"While, therefore, an applicant for a patent may stake out the boundaries of his territory, yet if, upon notice from the Patent Office that some portion of said territory is the property of another, or is held in common by the public, he acquiesces in such statement and alters his boundaries accordingly, he is concluded by such abandonment, and cannot afterward undertake to define his territory by rolling stones, which he may move about across the lines of his original boundaries, so as to appropriate property previously conceded to belong to others." Victor Talking Machine Co. v. American Graphophone Co., 151 Fed. 601, 81 C. C. A. 145.

"The grant of a patent is the grant of a monopoly, and the public are entitled to the use of everything not covered by the patent. Consequently the complainants are limited to the exact structure described, and it cannot be given an interpretation broad enough to cover structures made in accordance with the claim as rejected." Johnson Furnace Co. v. Western Furnace Co., 178 Fed. 819, 102 C. C. A. 267.

"An examination of the history of the appellant's claim, as disclosed in the file wrapper and contents, shows that, in order to get his patent, he was compelled to accept one with a narrower claim than that contained in his original application; and it is well settled that the claim as allowed must be read and interpreted with reference to the rejected claim, and to the prior state of the art, and cannot be so construed as to cover *either what was rejected by the Patent Office*, or disclosed by prior devices." Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645.

"In the case at bar, as in the case cited, the rejections and the requirements which the examiner made of applicants which they attempted to meet were based on references to specified patents, which, in the judgment of the examiner, were sufficient to warrant his action, and here, as in the case cited, to use the language of the court, 'it is not necessary to examine those patents with any purpose either of defining the prior art, or of otherwise justifying the action of the Patent Office. It is sufficient that Campbell [the applicant in the case at bar] acquiesced in the rulings, instead of taking the prescribed course of appeal.'" Crown Cork Co. v. Sterling Crown Co. (D. C.) 210 Fed. 26.

Under foregoing authorities, it must be apparent that, as to the collapsible mold or core, described in the claims aforesaid, which were rejected and withdrawn, any one would have the right to manufacture and sell, without being charged with infringement of the patent ultimately granted.

[2] So that the first question presented is: Does the mold or core manufactured by respondent differ from the mold or core described in the withdrawn claims, and, if so, in what particular? Without going into minute details, there is no question as to the interior mechanism, or as to the attachment of such mechanism to the plates, or as to the method of operating the interior expanding mechanism.

There can be no question about the segmental plates, as these are fully covered in the claims withdrawn, nor as to the "curved sheet

metal plates," nor as to segmental plates "slidable one over another," nor as to "movable overlapping outside sections," nor as to the expanding and contracting to any desired size, nor as to the adjustment of the segmental plates to the "longitudinal angle bar attached along its side," nor as to the curved plates each lapping over upon the next adjacent plate. All of these elements were fully covered in those claims rejected on account of the state of the art, which rejection was acquiesced in by the applicant.

Now, what else has the respondent in the machine which it is making, as shown by the evidence? In other words, what other element is respondent using in the manufacture of this mold or core, not fully described in the claims presented by Besser to the department, and rejected by the department, and withdrawn by him? The evidence shows nothing, and I can find nothing, except the springs used by respondent along the edges of the segmental plates, intended to apply such pressure as will hold the edges of the plates closely to the cylindrical form, as it is reduced in size, and permit of expansion of the form without bending the plates themselves.

Are these springs covered by the Besser patent? I do not think so. Counsel contend that these springs are covered by the term "curved resilient sections"; that the word "resilient" includes the use of the springs. It must be borne in mind that this word "resilient" was included in claim 4 at the time of its rejection, and that it was held by the Patent Office that, even with the term "resilient" applying to the segmental sections, the article was not patentable, and that the claim had to be amended by inserting the other words:

"Some of the sections tending at all times to assume a curvature approximating a minimum diameter of the form."

I do not think the word "resilient" adds anything to the Besser patent; at least in so far as the same can be held to be a practical working device. Besser may have had the idea that a proper degree of resiliency would be a good thing, but he invented nothing to produce resiliency; at most, it was a mere expression of a quality in the metal to be used. Resiliency simply refers to the tendency to "spring back" to its form, inherent in properly tempered metal, and so far as the patent shows, or the evidence shows, this quality was the only thing in the mind of Besser at the time the application was filed, and the patent granted. Of course he could not get a patent upon the temper or degree of temper in metal of common use; he could not patent the tendency to spring to its proper form, upon being bent; he could not patent the use of a known metal, and the evidence show clearly that it is not practical to use any metal in the manufacturing of these cores, which has any particular degree of resiliency, on account of the prohibitive cost, and the photograph, Exhibit 46, shows that complainant, in practical use of his contrivance, does not succeed in producing that degree of resiliency which can be considered an element of the patent granted.

Resiliency being merely a quality of metal, and respondent having the right to use any known metal, of course, it cannot be accused of infringing the patent because of any resiliency which may exist in

its segmental plates. It cannot be claimed there is an infringement by the curve of the segmental plates, because the curved segmental plates were prominently presented in the claims withdrawn, and if respondent has the right to use curved metal plates, and these curved metal plates have a certain degree of resiliency, I do not see how complainant can contend that it is an infringement of any valid elements of his patent. The springs used by respondent do not add to the "resiliency" in the segmental plate; they are a device intended to produce an adjustment of the curved segmental plate as it is expanded or contracted. But I do not find a hint of any contrivance of that kind in the patent granted to the complainant.

The fact is that the patent to complainant was granted solely because of certain descriptive phrases, such as:

"One plate having a curvature approximating the maximum diameter of the form, and another plate approximating the minimum diameter thereof."

"Some of the sections tending at all times to assume a curvature approximating the minimum diameter of the form."

"Certain of the plates being tensioned to spring inwardly when the form is expanded."

"To change in curvature as the form expands and contracts."

"A pair of arcuate upper side plates of less width than the top plate, and extending under the latter, opposite lower side plates of less width than the upper side plates, and extending under the latter."

"A bottom arcuate plate of greater width than the lower side plates," etc.

Without the foregoing and similar expressions, incorporated into each of the claims of the final application, the patent never would have been granted. Any one making a mold or core, as described in the claims withdrawn by Besser, would have to have plates having a "normal curvature." The contrivance being a cylindrical form of segmental plates, one overlapping the other, of course they would be curved, and the curvature would depend upon the size of the core.

Without going into the details of the evidence, I am not satisfied that as to this matter of curvature, or the width of the plates, or the forms to be assumed in the expansion or contraction of the core, that the respondent in any matter infringes any of the claims of the complainant. In fact, I do not see how, in practical use of the patent, the claims signify anything of value. I can see where, if the core were constructed of sheet steel, as is the model in evidence, that these elements might be of value; but when constructed, as it must be, of sheet metal, such as is used by complainant in Exhibits 46 and 47, I fail to see any practical value attaching to these elements. In any event, the proof is not sufficient to show that as to these elements, the respondent infringes.

In view of the foregoing, it is unnecessary to consider any of the other questions presented in the case.

The prayer of petition is denied. Complainant excepts.